Michael Lambrese vs. Evangeliste Turgeon } W. C. No. 1196.

## DECISION.

November 30, 1931.

WALSH, J. This is a petition for relief under the terms of the Workmen's Compensation Act.

Petitioner claims that he was injured in two accidents, one in June, 1930, and one in July, 1930, while in the employ of respondent as a carpenter; that said injuries were incurred in the course of his employment; that he was totally incapacitated from the time of the accidents until February, 1931, and has been partially incapacitated from that time to the date of the present hearing.

The injury complained of was a bruise on the hip caused by stumbling and falling to the ground in June, 1930, while engaged with other workmen in carrying a chute and a second injury to the same hip incurred while working as a carpenter on and about a cement form in July, 1930, in which latter case the petitioner claims he fell 5 to 6 feet from the top of the form to the ground and struck on the injured hip. Petitioner claims that an injury to the sciatic nerve resulted from the injury to the hip above described.

These are four issues of fact involved in the present case, viz.:

(1) Did Lambrese get the alleged bruise while at work for the respondent?

(2) Did the trouble with the sciatic nerve result as a consequence of the bruise of the hip?

(3) To what extent, if any, was Lambrese disabled by the bruise and/or the sciatic trouble?

(4) What is the measure of compensation, if any is due?

Taking up the first question: "Did Lambrese get the alleged bruise to his hip while at work for respondent?"

Lambrese on this point is vague and unreliable. He is confused on the dates. He is contradicted by Dr. Bolster, Dr. Palmer and Mr. Bachaud. The great weight of the testimony is to the effect that on June 25, 1930, he received a cut on his elbow and that the elbow injury was the only injury he received at that time and that there was no injury to his hip at that time. On the other hand, there is strong evidence that there was a bruise on his hip on July 3, 1930, the date of the second accident, and we feel that Lisabelle saw him fall and spoke of it to him at the time. Lisabelle was not convincing on this point. We conclude, therefore, that the petitioner did fall and did receive this bruise to his hip on July 3, 1930, in the course of his employment by respondent.

Taking up the second question: "Did the trouble with the sciatic nerve result as a consequence of the bruise to the hip?"

The bruise itself, according to Drs. Matteo and Palmer, had entirely disappeared in three to four weeks; Dr. Palmer found no trace of it on July 28, 1930; the petitioner was in bed for 9 to 10 days. Dr. Matteo, for petitioner, claims there was a sciatic infection induced by hematoma and that there was present a sacroiliac strain which constituted the cause of the trouble. The sciatic nerve appears through the opening in the pelvic bone under the buttock in the *back* of the thigh. The nodule, which the doctors agree indicates the point at which the force applied was most severe, was in the *front* of the thigh. If trauma caused this injury, the blow must have been of great force, must have been applied directly upon the nerve, must have rendered the patient unable to move and must have required ambulance service, according to Dr. Palmer. Since this petitioner continued to work for some time after his fall and did not feel any serious effects until he arrived at his home, if Dr. Palmer's opinion is correct, the sciatic condition was not caused by trauma. Dr. Palmer further says there was no evidence of any sacroiliac injury. He concluded that the sciatica was a true case of infectious origin, progressing slowly and developing insidiously without being noticed by the patient in its initial stages.

As Dr. Matteo's diagnosis and prognosis are based upon the presence of a sacroiliac strain, we feel that the burden of proof has not been sustained on this point by petitioner and must answer the second question in the negative.

Taking up the third question: "To what extent, if any, was Lambrese disabled by the bruise?"

We have previously found that the sciatica has not been shown to have resulted from the fall by a fair preponderance of the evidence. The total extent of the disability of petitioner, therefore, was for three to four weeks during which he was recovering from the hematoma and ecchymosis, or, at best, the eight weeks that he was under treatment by Dr. Matteo at his office.

Taking up the last question: "What is the measure of compensation, if any is due?"

His average weekly wages must be determined. The evidence shows conclusively that Lambrese was laid off during bad weather and lost considerable time between jobs. Taking 75 cents per hour for a 45 hour week as a standard, we think it fair to decide that Lambrese was without employment for at least three months in every year. His average weekly earnings would amount to $25.31 on that basis and his maximum compensation for total disability would be $12.66. Lambrese, then, is entitled to 6 weeks at $12.66, or $75.96, and Dr. Matteo is entitled to 9 calls, one at $5, remaining at $3 each while Lambrese was in bed and 18 treatments at the office at $3 each, a total of $83.

For petitioner: Joseph Veneziale.

For respondent: Henshaw, Lindemuth & Baker.